With that, please call the first case. 18-03-47, Christopher Franks v. Graphic Packaging. Please step up. Tell us who you represent. Tell us your name and who you represent. Good afternoon, Your Honors. My name is Thomas Fetick. I represent the appellant, Clayton, Christopher Franks. I'm Scott Howey, and I represent the defendant, Applee, Graphic Packaging lnt'l. Thank you. Whenever you're ready. Okay. Can you get the right pair of glasses? That's important. Good afternoon. I represent Christopher Franks, whose right arm was traumatically amputated by an industrial machine on the premises of the defendant. The lower court has ruled as a matter of law that the plaintiff was a lone servant, thereby granting the defendant the protection of the exclusive remedy theory. It is our position that the court err by ignoring significant issues of material facts relative to the lone servant doctrine and taking the issue away from the jury. Tell me a couple of those significant facts that you think the court overlooked. They overlooked, in my opinion, Your Honor, the significance of the contract that was entered into between the defendant, GPI, and the third-party defendant, Advantage Staffing. I believe they overlooked, the court overlooked. In what way did they overlook the significance of the contract? Well, it appears from the court's ruling that essentially the lower court either ignored or altered the contract and did not consider it in terms of making a determination as to whether there was an employment agreement between the plaintiff and the defendant. And I think that that is significant in this particular case. The law in this area requires two things for there to be a finding of a lone servant. Number one, the courts have focused on the right of direction and control. But in addition to that, in order to find a lone servant and make that a viable defense, the court must also find, or the jury, that there was in existence an actual employment contract between the plaintiff and the defendant. Counsel, the agreement that you suggest the court did not properly consider, according to the provisions of that agreement, it was stated therein that it will be construed in accordance with the laws of the state of Georgia. Is that news to you? Because your brief is absent any Georgia law. I guess I would, the court below I don't think considered that, nor did I, to be honest, Your Honor. Although I would say that we are here not to interpret a contract per se, but to make a determination under Illinois law whether there is a viable lone servant defense under these facts in this case. Well, tell me what contractual language had any effect at all on the defendant's ability to control the plaintiff over? It doesn't have an effect on that issue, Your Honor. It has an effect on the intent of the parties to enter into an employment contract. And if I can go forward, I think I can point out to you how, in this particular case, there is evidence that neither the plaintiff, the defendant, or the third party defendant ever showed any intent for there to be an employment contract between the plaintiff and the defendant. And there is indicia, in fact, of the opposite, that the defendant entered into a contract that had unequivocal language stating that under no circumstance was the plaintiff to be considered an employee of the defendant. Well, the employee was never part of the contract. Right. But to go further, Your Honor, there's an additional fact in this case that is very important. And that fact is this. When my client went to the staffing agency and he was interviewed and given certain orientation and he was presented with certain materials about the procedures, about the employment that he was seeking, he was given a test. He was given a written test. And one of the questions on the test was, whose employee are you? The defendant, GPI's employee, Advantage's employee, or both? My client answered the question, both. And guess what? He got the answer wrong. Because the proper answer that Advantage corrected was that he was an employee of Advantage only. So before my client ever set foot on the premises of the defendant's property, he was essentially instructed, advised, warned, and understood that under no circumstance was he any of those employees but Advantage. Counsel, how do we determine who is a borrowed employee? We look at to what he says or what does the law say about the two-prong test? Isn't that what we look to? Yes. And what I'm addressing in what I just said, Your Honor, goes to the second prong. Was there an employment agreement? It is my position to have an employment agreement, you need the intentions, you need two parties that intend to form an employment agreement. And the language in the contract between Advantage and GPI makes it very clear that GPI had no intention under any circumstance to enter into an employment agreement with the plaintiff. In fact, the contract says under no circumstance shall he be considered. And the evidence as to the plaintiff is that he took this test and was advised and instructed that you are not an employee of both. You are only an employee of Advantage. Well, didn't he say that all day, Counsel, that didn't they exercise control over him? I don't think that that, yes, they did. But that's only one of the two prongs. Right. That's one of the two prongs. Let's talk about the contract. Could the contract circumvent or somehow fly in the face of Illinois law that says if our employee has to go workers' comp versus negligence? I don't know how to answer that the way you posed it, Your Honor. But to give a short answer, I would say yes. Because the two parties have the ability to contract away certain things. It's not so much if they're contracting away the loan-serving doctrine. What they're contracting away is they're showing their intent as to the employment status of the plaintiff. They can intend whatever they want. But, again, can they go against the law of Illinois that determines, you know, this doctrine? No, but I'm not saying that they're doing that. I'm saying that the contract is an addition of intent of all the three parties involved as to the formation of an employment contract. I'm saying, Your Honor, my core position is that there was no contract of employment between the plaintiff and the defendant, which is something which is necessary for this loan-serving defense to work. By the way, that contract entered into between Advantage and GPI, they could have put an exception in there if they wanted to. I've actually seen cases where they addressed the loan-serving issue in that contract, but they didn't. They made an unequivocal sweeping statement that under no circumstance shall my client be considered an employee of the defendant in this particular case. So I say that without the intent of the two parties to enter into the employment agreement, there cannot be a finding that there is such an employment agreement. Counsel, I have to ask you about the Christensen case. Christensen, which you rely on pretty heavily. I mean, we all agree there's two prongs to look into as far as the loan-serving doctrine. And then Christensen says the employee must be wholly free control of one and wholly subject to the other. The use of the term wholly, free from, and subject to, that's not in most cases, though. Isn't it a balancing act? It's somewhat of a balancing act, Your Honor. And in this case, the plaintiff was not wholly free of the control of Advantage. But, again, my point is, using the word wholly, that shows up in Christensen, and it comes from the Richard v. Illinois Bell case. But the newer cases don't talk about that, wholly under control or wholly free from. Not so much, but they do consider all of the factors. And I would like to point out some of the factors that exist in this case. Okay. I would ask that you be reminded, once again, I'm relying mostly on the lack of an existence of an employment agreement. But if you go beyond that, I think it's important to remember that the Advantage contacted the plaintiff. They interviewed the plaintiff. They gave tests to the plaintiff. They also drug tested the plaintiff. They educated the plaintiff. This is odd. They actually educated the plaintiff on his employment status by giving him that test and telling him he was only an employee of Advantage and not also an employee of GPI. So they educated him on his employment status. They required him to call him once a week to Advantage to tell him about what was going on at work. They controlled the disciplining of Mr. Franks, my client, in his role at GPI. They controlled his time off. If you look at the record, you might remember that on one occasion my client asked for an afternoon off to go to a VA doctor's appointment. The response of GPI was, why are you asking us? You have to ask Advantage. So that would show that they were retaining significant control. Advantage paid him. They deducted his taxes. And Advantage paid for the workman's compensation insurance. So was there any control or direction coming from your client? From who? Bradford. When he was over there on their promises, yes. They would say, okay, go clean this machine or go do that. Yes, there obviously was some control on the part of GPI. Some control? It seems to me that GPI controlled what he did, how he worked. They told him what to do, what materials to use. Advantage didn't have any part in any of that. No, but Advantage did not wholly release control of him in the terms of the things that I just set forth. So they did retain some significant amount of control, although the day-to-day control I would concede was in GPI's hands. Other than the request for time off, what else did they retain control over? He had to call in and report to them once a week. They had policies and procedures about what he was to do if there was an injury at work. He had to submit his time to Advantage, his hours. You know, they took care of all of the administrative part of things. So that was part of the relationship between the plaintiff and Advantage. You know, the defendant GPI set themselves up, really, as in a position of we don't want any of the responsibility of being an employer. We're so insistent on not being considered an employer, we're going to put it in the contract with unequivocal language that under no circumstance will we be considered an employer. And Advantage knew about that, and they told the plaintiff about that. The plaintiff understood full well when he walked into GPI that he was not under any circumstance an employee of GPI. He was told that by Advantage. It's in the record. That test is in the record. So how could my client consent to an employment agreement with GPI when GPI denounced it and Advantage denounced it and advised my client of it? What indicia of consent is there to any kind of an employment contract? There just isn't any. Or certainly there's an issue of fact as to whether there is any. Shouldn't a jury be able to consider that this contract said under no circumstance should he be considered an employee of GPI? Shouldn't a jury be allowed to hear about this test that he took where he was told he was not going to be an employee of GPI? Those are types of facts that a jury should be able to consider in making a factual determination as to whether my client was in fact a lone servant. I don't think it is for the court to make those factual decisions. I think it's for a jury. Lastly, you have asked some questions, and I've covered most of what I'd like to say, but I think there's a judicial admission in this case as well. In the third-party complaint, the defendant GPI states, quote, Plaintiff was a contract employee or temporary worker as those terms are used in the CSI, i.e., the contract. As those terms are used in the contract. The terms in the contract say under no circumstance shall he be an employee of GPI. So they have essentially admitted in their pleadings that the contract ensures the plaintiff's employment status. They're now in here trying to flip to the other side and say, well, hold on. Everyone involved, the plaintiff, the defendant, and advantage all seem to be in agreement that my client is not supposed to be an employee of GPI. But now, once they get sued, they want to completely go against the contract, against all the other addition in the case, and come in here and claim that he's a lone servant, thereby escaping liability. Counsel, you said there was a contract where it exists, as you suggested, in this place, where they denounce the fact that they're going to be an employee. And then it turns out the person that hires the person to actually do the work, not the association that lent them out, they have total control over them. All this employment agency did was send them over. It did nothing other than that. Is it still the same analysis? Only if you go to the core of contract law, which in my understanding compels an analysis of was there a consensual agreement. Was there an intent on my client's part to be engaged in an employment contract? And I don't think there's evidence of that. I think the evidence is to the contrary. This is what separates this case from the other cases, by the way. I'm not sure you answered Justice Connell's question. I'm getting lost in your answer. Can you answer her question, please? Your question again, Your Honor. All right. Let's say there was a place that's like Advantage that had someone on their list that they wanted to hire out. So they sent them over to the company, and the contract says they're not our employee, we want nothing to do with them. But everything is under control of the group that hired that person. Advantage does nothing, or that person in Advantage's place. They do nothing other than tender the employee. Is it still the same, the contract rules? I don't know, Your Honor. I think the fact of the contract is a fact that a jury should be allowed to consider in making a determination on that particular issue. I think that's the best way I can answer it. And these cases are all very fact-specific, these loan-serving cases. And the facts are a little twisted in this case, particularly with the unequivocal language in the contract between Advantage and GPI and written evidence that my client had no intent to enter into an employment agreement with GPI. So those are little twists that we don't see in other cases, and I'm not sure that there's any other case directly on point that has those kind of facts. So I would say in summation that the defendant did everything possible to make sure that my client was not an employee until such time as they got sued. They entered into written agreements. Everything that we see on the record in this case, all three parties in writing evidence of no intent to enter into an employment contract. That employment contract is the second prong that is necessary to form the loan-serving defense, and in this case, it's not present. Or at a minimum, it should be allowed to be presented to a jury so that I can make an argument to a jury, ladies and gentlemen, how can we find that my client is a loan-servant when GPI has shown us in writing that they have no intent to be his employer? So I would say based on that, I would ask that the court reverse the lower court's decision and allow me to present my client's case for his grave injuries to a jury and let them decide the issues. Thank you. Thank you, Mr. Feddick. You'll have a few minutes for rebuttal. Thank you. May it please the court. I'm Scott Howey, and I represent the defendant at the Lee in this matter, Graphic Packaging International. The status of the plaintiff as a borrowed employee was not something for Graphic or for Advantage to decide between themselves by fiat. The status of borrowed employees governed by the Workers' Compensation Act, a statute that has gone unmentioned in the plaintiff's argument this afternoon. But the Workers' Compensation Act is the source of the borrowed employee doctrine, particularly in sections 1A.4 of that statute. And there was nothing about the contingency staffing agreement that even evidences an intention to abrogate that statutory scheme, nor any successful effort to do so. This court has never endorsed the idea that a contract can disregard that statutory quid pro quo by disclaiming an employee or a borrowed employee doctrine. And it's never chosen to discard the two-prong rule, the two-prong test, for whether someone is a borrowed employee under that section of the Workers' Comp Act. That doctrine gave the plaintiff a guaranteed recovery by imposing workers' comp obligations on Graphic Packaging as a borrowing employer. But that remedy is in workers' compensation and not in the common law action that the plaintiff has brought. For that reason, the summary judgment in favor of Graphic Packaging, or GPI, was correct and should be affirmed. It's important to recognize that the borrowed employee doctrine does not set up an either-or proposition. The plaintiff has gone to great lengths to explain that he was, in fact, an employee of advantage. But that's not in dispute. There's no question that the plaintiff was an employee of advantage. In fact, that's part and parcel of the borrowed employee doctrine. This court said in Kodanyk v. Rosengrotto that an individual may be the general employee of one employer and a loaned employee of another. So that's just part of what the borrowed employee doctrine provides. And it's not enough for the plaintiff to establish that he was, in fact, an employee of advantage. And that's just one way in which this case mirrors a host of other cases in which summary judgments for borrowing employers were affirmed because the borrowed employees met that two-pronged test. The plaintiff in this case had worked that was chiefly controlled by GPI, and he had consented to an implied contract for hire with GPI. There are two aspects of that two-pronged test that I think need to be further explicated this afternoon based upon some of the arguments the plaintiff has made. Primarily the fact that this two-pronged test is not a pair of elements that both have to be satisfied. A.J. Johnson-Paving, which is the case that initially set forth the borrowed employee doctrine in the workers' comp context, describes them as factors that have to be satisfied, not as two elements that both have to be satisfied in order to have a borrowed employee doctrine established. Second, with respect to that second prong, which I'll get to in more depth in a moment, but the second prong requires that there be a contract for hire between the borrowing employer and the employee. It doesn't require that the plaintiff is described this afternoon as being an employment contract. The cases are all very clear in referring to that as a contract for hire. In no case is there a written contract of any kind, let alone an enforceable employment contract. Most of those cases, I believe, do not even include, do not involve oral contracts. They are almost all implied contracts for hire, not the sort of employment contract that might be judged according to strict conceptions of contract law or employment law. In fact, the concept of a contract for hire, the very notion of hiring someone, does not necessarily involve the question of employment. So the requirement of an implied contract for hire, which multiple cases set forth, is not something requiring something so formal and rigorous as the employment contract that the plaintiff's counsel has spoken of at such great length this afternoon. In most of those cases, the loaning employers were temp agencies, just like Advantage was in this case. They were in the business of furnishing workers to other employers. And this case shares the most important features of those cases in which summary judgments or dismissals were affirmed. And most of those facts come from the plaintiff's own deposition testimony. The plaintiff testified to multiple indicia of GPI's control over the manner in which he did his work for GPI. And in fact, plaintiff's counsel has conceded that at this argument this afternoon. GPI gave him work assignments. They told him where to go and what to do and how to do it and when to do it. GPI set his hours. And those hours matched the hours of GPI's own employee. It's right down to the breaks that all of them took together. GPI could fire him from its own facility. Couldn't fire him from Advantage. But the case is a region that said that that is not an important factor in determining a barred employee's status. What matters is that GPI could say they didn't want him at its facility any longer. And those are the shortcomings. What about GPI's intent? Can we get to that? Or counsel, I don't want to interrupt you, but I'm concerned about that argument your opponent makes as far as the intent that GPI had in signing that contract. Certainly. The contract sets forth in Section 7, which is the one that the plaintiff primarily relies upon, Section 7 sets forth the status of the staffing company. That's the title of the section. And the body of that section is consistent with the title, establishing simply what the status of Advantage was as the staffing company in that contract. The intention of that provision from the context is quite clear, that it is intended to make Advantage an independent contractor for whatever purposes that might be relevant to, and more importantly, for any purposes that might be within the control of GPI and Advantage, which would not include, for instance, whether someone can be a barred employee consistent with the requirements of the Workers' Comp Act. There is nothing in the contingency staffing agreement, either in Section 7 or in any other portion of it, that suggests that GPI had an intention to waive or repudiate the requirements that the Workers' Comp Act imposed upon it as a barring employer under Section 1A4. The Workers' Comp Act is what made the plaintiff a barred employee, and the section of the contract that the plaintiff relies upon simply defined Advantage as an independent contractor. And then they wanted to describe employees that Advantage might supply in a manner that's consistent with that understanding. So, counsel, you know, your client went to some trouble to have that clause in the contract, and to use your opponent's paraphrase, he basically says you're trying to eat your cake and have it, because until the lawsuit arose, the contraction, you were relying on that language, and now you're saying, well, that language really doesn't mean what it says. Can you address that? Certainly, Your Honor. The language applies to the context in which it's addressed in the contract, and that is simply to define what the status of the staffing company would be. For what purpose? For purpose, according to the body of the paragraph, it referred primarily to employee benefits, and presumably that might also be relevant to a consideration in another sort of case if GPI were to be sued for Mr. France's negligence. It might be able to point to that language and say he's not an employee for these purposes. He worked for an independent contractor. Those are things that Freedom of Contract allows parties to do. It lets them say, this is the relationship that we believe ourselves to be in. What Freedom of Contract doesn't do is allow parties to exempt themselves from statutory requirements. That is particularly true of statutory requirements that are intended for the protection of injured workers, and it's especially true in situations where the statutory protection depends upon this carefully balanced quid pro quo that the Workers' Comp Act sets forth and the legislative scheme that it sets forth. The Workers' Comp Act provides, as the court well knows, for liability without fault imposed upon the employer, including the borrowing employer under this section of the Comp Act, in exchange for a guaranteed recovery source for an injured worker. So even if this case went to trial, bench or jury, and if the owner of Graphic said that, well, I didn't want him to be my employee. I don't want him to be borrowed. It's right in the contract. Even with that testimony that your opponent would offer, he still would not prevail. Is that right? Because of the definition that's in the Workers' Comp Act. Correct. He doesn't have a cause of action because the Workers' Comp Act, and not just the definition in the Act itself but the way that it's been interpreted by the Supreme Court beginning with A.J. Johnson and by a host of cases since then, sets forth that these facts do, in fact, make him an employee. There's no meaningful dispute, I think, after today's argument, that he certainly satisfied the requirements of the control prong, in that all of the features of his work were controlled in every meaningful respect by GPI, and that the only things that Advantage did, by stark contrast, were, as the plaintiff's counsel himself described this afternoon, were administrative in nature. They were clerical work. They were, as far as the plaintiff described it at his deposition, involved only coming to the plant once a week or so and picking up time cards. One case called this customer service. It's certainly something along the lines of client relations. Most importantly, though, it doesn't show any control over the work that he did. In fact, his contact at Advantage visited only occasionally and wouldn't even speak with him unless there was some, unless she could do so without interrupting his work. And even further, illustrating the fact that she had no control over his, the manner in which he did his work, after the accident occurred, none of the authorities who investigated the accident had any interest in speaking to her, not the Schomburg police, not the Federal OSHA investigators. And so that just further reflects that her role with his employment was only in an administrative capacity, only the sorts of things recognized in many other cases as being strictly administrative in nature. With respect to the second prong, it's important to recognize that this case arises in the context of a temporary agency. And temporary agencies are actually specifically referenced in the Workers' Comp Act as being, generally speaking, borrowing or knowing employers. And there is case law that bounds that holds that for purposes of the borrower-employee doctrine, a person who is working through a temporary agency for a known employer has implicitly consented to a contract for hire. And again, they don't require a formal employment contract. They require only an implied contract for hire, which many decisions of this Court and the other districts have recognized. An implied contract — Mr. Howey, could you start wrapping up, please, again, for the end of your time? I'd be happy to, Your Honor. There is no genuine issue of material fact about whether the parties can exempt themselves from statutory obligations intended to protect workers. The Workers' Comp Act is what made the plan of a borrowed employee. And that is the reason that the borrowed-employee doctrine applies in this case and extends both the obligations of the Workers' Comp Act to graphic packaging as well as the benefits and the immunities that are part of that carefully balanced quid pro quo. Legislative schemes does not also provide a tort remedy for the plaintiff in situations such as this. And so the summary judgment in favor of graphic packaging was correct and should be affirmed. Thank you. Thank you. No questions. Thank you. Just briefly, Your Honors. I think the statutory scheme is intended to assure that in a lowing situation there is, in fact, some comp coverage. It makes both potentially liable for comp coverage. I don't think it really addresses the issues in our case, okay? The case law controls all of that. Counsels seem to make a distinction between contract for hire and the use of the words employment contract by me. I submit to you there is no difference. A contract is a contract, a contract for hire. Every contract, in my opinion, requires mutual consent, mutual intent to enter into that contract. That's what's missing. The language in the contract between advantage and GPI is unequivocal. It means, counsel says, well, its intended meaning was X. Well, its intended meaning is the words that appear in the contract under no circumstances. How more clear could a contract be? I don't think it's possible. So when they say under all circumstances, I would say that means for all purposes, including this purpose. There's nothing in the law that prevents these two parties or these three parties from doing this. There's freedom of contract. They chose what contract to enter into. They now wish to flip it over and disregard that part of the contract. I do not concede, by the way, that there is no issue under control of the plaintiff. I don't concede that because, Your Honor, you asked me the question about the holy three language. Yes, you are correct. The most recent cases don't seem to discuss that very much. I don't think that language has been overruled at all. I think it's still a viable concept, and I think there's evidence in this case that should go to a jury showing the substance of the power advantage retained in this situation. And it's very detailed, but it is there and it is in the record. So I would ask that you, on either that basis or on the absence of the employment for hire being present, that you would reverse this and give my client a chance at the trial court level. Thank you. Thank you, counsel, and both of you for a spirited argument. This matter will be taken under advisement. Thank you. As soon as you vacate, we'll call the next case.